**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MELVIN JOEL CRAWFORD,<br><br>    Petitioner,<br><br>    v.<br><br>M.E. SPEARMAN,<br><br>    Respondent. | Case No.: 1:15-cv-00544-LJO-JLT<br><br>FINDINGS AND RECOMMENDATION TO DENY THE PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1) |

Petitioner claims that because he suffered two parole violations for failing to register as a sex offender, the Double Jeopardy Clause precluded criminal prosecution for the same act. Because the Court finds the claim is unexhausted and because he has failed to demonstrate the prosecution violated the Constitution, the Court recommends the petition be **DENIED**.

**I.    Factual Background**

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

> Crawford was released from state prison to parole on October 21, 2010. On October 28, 2010, Hanford Police Department Officer Brian Toppan registered Crawford as a transient sex offender. Toppan ensured Crawford read and initialed an advisement that states: he has no residence address; he must register in the jurisdiction where he is physically present as a transient within five working days of "becoming one"; thereafter, he must update his information no less than once every 30 days with the law enforcement agency having jurisdiction over the place where he is physically present as a transient; and he did not need to report changes of transient location within

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1).

1

the 30 day period unless he moved out of state. Toppan saw Crawford sign the registration form.

Hanford Police Department Investigator Darren Matteson was in charge of sex offender registration for the Hanford Police Department from 2003 through September 2011. He had access to the Department of Justice databases that enabled him to determine when and where a sex offender registered. During a routine check of registrants on January 12, 2011, Matteson became aware that Crawford had not reregistered 30 days after October 28, 2010. He called Crawford's parole agent, Larry Cassina, to see if Crawford had been taken into custody before the expiration of the 30 day period. Cassina said Crawford was arrested on December 13, 2010, more than 30 days after October 28. After checking the Department of Justice databases and calling the King's County Sheriffs Department, Matteson determined Crawford had not registered as a transient sex offender within 30 days of October 28, 2010.

Larry Cassina supervised Crawford on parole between October 28, 2010 and December 20l0. During that time, Crawford was a transient in Kings County, primarily in Hanford, and wore a GPS tracker. Cassina knew Crawford had to register as a sex offender. Cassina kept in regular contact with Crawford and was aware he sometimes slept behind the parole office. As a transient, Crawford stayed in multiple locations. When Crawford was arrested on December 13, 2010, he indicated to Cassina he had not updated his registration.

Cassina informs his parolees of the following with respect to sex offender registration: "When they're- when they initially are released from custody each time they're required to report to the office and we go over some of the basics. If it is a fresh case, we go over all of the basics usually, and then as it is a rerelease we just sort of touch on anything that is new. Specific to registration, on that first visit we talk about the requirement to register and we instruct them to do that, and once they have registered they bring in or we tell them to bring in a copy of their registration receipt for our records, and then as they register or reregister with updates and, for example, we'll often ask them to provide a copy, you know, once they have done that registration update."

*Defense*

Crawford testified in his own defense. Crawford said he was paroled on October 28, 2010, and came to Kings County. He knew he had to register as a sex offender because his parole agent, Cassina, told him. Crawford was homeless; he lived on th streets or in motels if his family gave him money. If he could not find a place to stay, he would stay behind the parole office. Crawford had a cell phone, which he used to call Cassina every day.

When asked why he did not register again after October 28, 2010, Crawford responded: "Well, my mom was dying from cancer[.] I know it was not an excuse, but I was stressed and I told Mr. Cassina on the phone, he told me take care of it, but before then he arrested me for the same matter so I did ten months in prison for this." Crawford claimed that between October and December 2010, he tried to register at the Hanford Police Department but was told that since he "was staying out there at the motel" he needed to "check in" with the sheriffs department because "it was out of their Jurisdiction." Crawford said he went to the sheriffs department in November 2010, filled out paperwork and had his picture taken. He thought he had registered. He did not know the date he registered or the name of the person who registered him, but he knew it was a Tuesday and the person was a young brunette female.

When defense counsel asked Crawford if the paperwork at the sheriffs department was the same paperwork he filled out at the Hanford Police Department when he was paroled, Crawford answered, "No, it was just like she said, it was an update." When asked if he remembered what the paperwork said, Crawford responded "[b]asically the same thing, but she didn't tell me nothing about coming back in 30

days." Crawford said he did not know he had to return in 30 days to register until his parole agent told him on the day of his arrest. Although Crawford signed a document that said he had that responsibility as a transient, he "didn't read it, they just told me to initial" the boxes. Crawford had never been a transient before. When the prosecutor asked if he understood the form when he registered with the sheriffs department, Crawford responded, "I knew it was the same form, I assumed it was the same form."

Crawford admitted registering as a sex offender in 2003, 2004, and 2005. He testified the following about these forms: he initialed the requirements on the 2003 form, but did not read them because a lot of people were there and everyone was trying to get out; he read and initialed the 2004 form but he "thought it was different since I was a transient. There you have to register on your birthday once a year"; and he initialed and signed the 2005 form, which he "[p]robably" did not read. He was not a transient when he signed any of these forms. When the prosecutor asked Crawford to read aloud from one of the forms he signed, Crawford responded, "My reading is not that good, I cannot read." He also testified he had a problem reading and, when asked if he could read a little; he: responded, "Enough, but not to really nnderstand, and plus I need glasses, this is - the words are too small."

After the prosecutor pointed out that Crawford signed his name on the 2005 registration form next to the paragraph that said it was signed under penalty of perjury and he understood the failure to comply with registration requirements was punished as a criminal offense, Crawford responded, "I couldn't read that. I have a third grade education, and it would have been better if they went over it with me or asked me to read it out loud and they would have knew [sic] that I couldn't read." He never asked anyone to explain the registration forms to him. When asked if he relied exclusively on what his parole agent told him, Crawford answered, "Yeah, that is his job, he is supposed to inform me the right information." Crawford did not blame Cassina, though, as he should have told Cassina he could not read. Crawford denied telling Cassina on the day of his arrest that he had not registered. He admitted having convictions in 1991 for forcible rape and penetration with a foreign object.

(Doc. 15-1 at 3-7)  The jury convicted Petitioner of failing to register or reregister as a transient sex offender within 30 days of his last registration.  Id. at 2.  The jury found that he had suffered two prior felony strikes and, based thereon, the court sentenced Petitioner to 28 years to life.  Id. This included a term of 25 years to life for the underlying charge and one year for each of his prior prison sentences.  Id.

**II.    Procedural Background**

After his conviction, Plaintiff filed a direct appeal to the Fifth District Court of Appeal.  The 5th DCA affirmed the conviction on November 22, 2013.[2] (Doc. 15-1) He then filed a petition for review

---

[2] The court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and the Court may take judicial notice of these records. Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), aff'd, 645 F.2d 699 (9th Cir.); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989); Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736, 738

in the California Supreme Court, which denied the petition on February 11, 2014.  Next, he filed a petition for habeas corpus in the trial court. (Doc. 1 at 14-15)  On June 3, 2014, citing In re Dixon, 41 Cal.2d 756, 759 (1953), the court refused to consider any claims that could have been raised in his direct appeals.  Id. at 14-15. It also denied the claim of ineffective assistance of counsel because Petitioner failed to set forth sufficient facts to support his claim.  Id. at 15.  On July 9, 2014, Petitioner filed a motion to vacate and, apparently, more fully set forth his claim of ineffective assistance of trial counsel.  Id. at 19-20, 28-31.  However, the clerk of the court refused to file it, given the court had denied the already and there was no active case, and returned it to petitioner.  Id. at 16, 20.

After this, he filed a petition for writ of habeas corpus in the 5th DCA.  The court denied the petition on October 23, 2014 and indicated,

> The petition is conclusional and lacks reasonably available documentary evidence needed to evaluate the claims. The trial court's refusal to consider petitioner's "Motion to Vacate," submitted after the court denied his habeas petition, was proper. Since there was no action pending before the court at that time, it had no jurisdiction to act on petitioner's motion.

(Doc. 1 at 17) The Supreme Court denied his petition for habeas corpus filed in that court on March 18, 2015. (Doc. 1 at 7)

**III.    Discussion**

**A.    Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114

---

(6th. Cir. 1980). Thus, the Court takes judicial notice of the internet website for the California Courts, containing the court system's records for filings in the Court of Appeal and the California Supreme Court.

F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B. Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

**C.    Claims**

In this action, Petitioner raises one central claim.[3] He asserts that the trial court erred in allowing him "to stand trial after being twice place in jeopardy for a charge that Petitioner had already served time for twice." (Doc. 1 at 3) In addition, he asserts that his trial counsel was ineffective for failing to raise this issue with the trial court. Id. at 5.

---

[3] Petitioner asserts that the violation of double jeopardy constituted a violation of "Petitioner's right to due process and equal protection." (Doc. 1 at 3) Exactly what Petitioner means by this is unclear. Petitioner offers no analysis or argument supporting his claim that he suffered a violation of due or equal protection. Though Respondent surmises that Petitioner intends this to somehow implicate the habeas proceedings in state court. However, given the manner in which Petitioner's "Ground One" is worded, the Court is not confident this is correct. Had Petitioner actually believed he suffered a violation of due process or the Equal Protection Clause, he was obligated to, at least, describe how. The Court declines to speculate as to what Petitioner means in this regard and deems any such claims to be **ABANDONED**. McBride v. Farrington, 156 F.2d 971, 972 n. 1 (9th Cir. 1946) [Merely identifying an error, without developing it in the brief constitutes an abandonment].

### 1. The claims are unexhausted

A petitioner who wishes to lodge a collateral challenge to his conviction by a petition for writ of habeas corpus must first exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state and gives it the initial opportunity to correct the state's alleged constitutional deprivations.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court.  Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996).  A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis.  Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1 (1992) (factual basis). The petitioner must have specifically told the state court that he was raising a federal constitutional claim.  Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), *amended*, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir. 1998).  Where a petitioner fails to present the claim to the highest state court, the Court must dismiss the petition. Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006); Jiminez v. Rice, 276 F.3d 478, 481 (9th Cir. 2001).

However, in Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986), the Ninth Circuit stated that it was "incumbent" on the district court, in determining whether the federal standard of "fair presentation" of a claim to the state courts had been met, to independently examine the petition to the California Supreme Court.  Id. at 1320.  "The mere recitation of In re Swain does not preclude such review."  Id.  Indeed, the Ninth Circuit has held that where a prisoner proceeding pro se is unable to meet the state rule that his claims be pleaded with particularity, he may be excused from complying with it.  Harmon v. Ryan, 959 F.2d 1457, 1462 (9th Cir. 1992)(citing Kim, 799 F.2d at 1321).  "Fair presentation" requires only that the claims be pleaded with as much particularity as is practicable.  Kim, 799 F.2d at 1320.

In his direct appeal, Petitioner failed to raise the issue of double jeopardy.  (Doc. 15-1)

7

Likewise, it does not appear that he raised the claim of double jeopardy in his habeas petition in the trial court. (Doc. 1 at 14) Moreover, though he raised the claim of ineffective assistance of trial counsel in the habeas petition filed in the trial court, he failed to provide the court sufficient detail to allow the court to determine it. Id. The trial court specifically told him what was missing from the petition. Id. Nevertheless, rather than filing a new petition with the missing information, in the same case number, he filed "motion to vacate sentence" based upon his claim that trial counsel was ineffective for failing to recognize and raise that he had been subject to double jeopardy. Id. at 19-20. The clerk of the court rejected this filing because the matter was closed. Id. at 16.

Once again, Petitioner filed a habeas petition in the 5th DCA and argued the ineffectiveness of his trial and appellate counsel. (Doc. 1 at 21-22) However, Petitioner failed to set forth adequate facts to show how his attorneys failed him. Id. As noted above, the Court of Appeal specifically rejected the petition because he provided conclusions, rather than factual allegations and failed to attach documents that supported his claim. (Doc. 1 at 17)

Rather than re-filing the petition and adding the missing information, Petitioner filed a habeas petition in the California Supreme Court. (Doc. 1 at 8-13). This time, he argued that the trial court erred in allowing him to stand trial despite that he had suffered two parole revocations as a result of this conduct. Notably, he presented no evidence to support this claim and, though he referred the Court to the "attached petition," he did not attach a petition. Id. at 10. The Court denied the petition.

Notably, while not citing People v. Duval, 9 Cal.4th 464, 474 (1995), the 5th DCA used language that tracked Duval. In Duval, the California Supreme Court held,

> Because a petition for a writ of habeas corpus seeks to collaterally attack a presumptively final criminal judgment, the petitioner bears a heavy burden initially to plead sufficient grounds for relief, and then later to *prove* them. "For purposes of collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence; *defendant* thus must undertake the burden of overturning them. Society's interest in the finality of criminal proceedings so demands, and due process is not thereby offended." (People v. Gonzalez (1990) 51 Cal.3d 1179, 1260 [275 Cal.Rptr. 729, 800 P.2d 1159], italics in original [hereafter Gonzalez].)

Id. The Court continued,

> The petition should both (i) state fully and with particularity the facts on which relief is sought [Citations], as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and

affidavits or declarations. [Citations] "Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing." [Citation] We presume the regularity of proceedings that resulted in a final judgment [Citation], and, as stated above, the burden is on the petitioner to establish grounds for his release.

Id. When the California Supreme Court denied Petitioner's habeas petition, it did so without any analysis. (Doc. 1 at 7) Courts interpret this to mean that the latter court adopts the rationale of the prior court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Thus, because Petitioner failed to provide the California Supreme Court adequate information describing his claims and evidence to support the claims, he has failed to exhaust his state court remedies. As a result, the Court recommends the petition be **DENIED**. Even still, the Court would exercise its discretion under 28 U.S.C. 2254(b)(2) to deny the petition.

First, the Court notes, there is no evidence to support Petitioner's claim that his parole been revoked twice for the same failure to register or re-register as a sex offender. However, it is undisputed that a parole violation returned Petitioner to prison for a period in December 2010. (Doc. 15-1 at 3-7) Even assuming this parole revocation was based upon the same incident and set of facts as the crime for which Petitioner is currently in custody, this would not offend double jeopardy.

In Standlee v. Rhay, 557 F.2d 1303, 1306 (9th Cir. 1977), the Ninth Circuit Court of Appeal held,

> It is well established that parole revocation is not part of a criminal prosecution. Morrissey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Revocation of parole is remedial rather than punitive, since it seeks to protect the welfare of parolees and the safety of society. Gagnon v. Scarpelli, 411 U.S. 778, 783-84, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, supra, 408 U.S. at 477, 92 S.Ct. 2593. The termination of parole results in a deprivation of liberty and thus is a grievous loss to the parolee. But the harshness of parole revocation does not alter its remedial nature. See United States v. National Association of Real Estate Boards, 339 U.S. 485, 493 n. 6, 70 S.Ct. 711, 94 L.Ed. 1007 (1950); Gregory v. Wyse, 512 F.2d 378, 382 (10 Cir. 1975).

Likewise, in United States v. Redd, 759 F.2d 699, 701 (9th Cir. 1985), the Court held, "The same actions by a probationer can lead to direct punishment and can also constitute the basis on which his probation for a prior offense is revoked. [Citations] There is no rule requiring courts to consider probation revocation at the same proceeding or time as they make determinations concerning new offenses with which a probationer is charged." Finally, in the case cited by Respondent, United States

v. Soto-Olivas, 44 F.3d 788, 789 (9th Cir. 1995), the Ninth Circuit held,

> Our prior case law establishes unambiguously that double jeopardy does not preclude criminal prosecution for conduct which also serves as the basis for a parole or probation revocation. [Citations] This is so because "revocation is not punishment for the subsequent events which violate the parole [or probation] and which may also constitute a separate crime." [Citations]

Therefore, there is no merit to his claim that he suffered a violation of double jeopardy. Likewise, because this claim fails, his claim that his appellate attorney provided ineffective assistance of counsel by not raising the double jeopardy argument, also fails. United States v. Redd, 759 F.2d at 701. Thus, the Court recommends the petition be **DENIED**.

### IV.     Findings and Recommendation

The Court finds it lacks habeas jurisdiction over the first claim and the other claims fail to demonstrate a due process violation. Therefore, the Court recommends the petition be **DENIED**.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. **Within 21 days** after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and **filed within 10 days** (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **April 7, 2016**                        /s/ Jennifer L. Thurston
                                                             UNITED STATES MAGISTRATE JUDGE